In the Matter of the Application of ROBERT E. PATTERSON, Petitioner, for an Alternative Mandamus Order, Directed to THE COUNCIL OF THE SENECA NATION OF AMERICAN INDIANS, Residing on the Allegany, Cattaraugus and Oil Spring Reservations, Consisting of WILLIAM C. HOAG, President, and Others, Respondents.

Supreme Court, Erie County, December 23, 1926.

Indians — tribal relations — application for alternative order of mandamus requiring respondents to enroll petitioner as member of Seneca Nation and to grant him all rights of person and property which members of said nation enjoy — petitioner's father was duly enrolled Seneca Indian, but his mother was white woman — Seneca Nation is subject to laws of State which entitle petitioner to participate in community property and funds of tribe notwithstanding tribal customs — State courts have jurisdiction over Council of Seneca Nation — application granted.

Petitioner, whose father in his lifetime was a duly enrolled Seneca Indian, but whose mother was a white woman, is entitled to an alternative order of mandamus requiring the respondents to enroll said petitioner as a member of the Seneca Nation of American Indians and to grant him all the rights of person and property which a member of said nation has and enjoys, for, while respondents' refusal to enroll said petitioner is predicated upon a tribal custom by which the status of an Indian is traced only through the maternal line, and upon the ground that the members of the Seneca tribe consist only of persons born to enrolled Seneca Indian mothers, the Seneca Nation is subject to the laws of this State which entitle petitioner to participate in the community property and funds of the tribe.

The courts of this State have jurisdiction over the Council of the Seneca Nation, notwithstanding the fact that any determination they may make may interfere with the tribal customs of the Seneca Nation.

APPLICATION for an alternative order of mandamus.

*John L. Heider,* for the petitioner.

*J. M. Seymour* [*George P. Decker* of counsel, for Council of Seneca Nation, specially], for the respondents.

EDWARD R. O'MALLEY, J. This is an application for an order directing that an alternative order of mandamus be issued requiring the above-named defendants to enroll the petitioner as a member of the Seneca Nation of American Indians, and to require said defendants to grant said petitioner all of the rights of person and property which a member of said nation has and enjoys.

The Seneca Nation of Indians reside on the Allegany, Cattaraugus and Oil Spring Reservations in the county of Erie, exercising certain attributes of sovereignty or governmental powers

under a charter or constitution approved and granted by the State of New York. The petitioner's father, Nathaniel C. Patterson, was during his lifetime a duly enrolled Seneca Indian. His mother, Alice Estelle Patterson, was a white woman. The Council of the Seneca Nation refuses to enroll this petitioner as a member of the nation or tribe, upon the ground that the usages and customs of the tribe or nation provide that the status of an Indian is traced only through the maternal line, and that the members of said tribe consist only of persons born of enrolled Seneca Indian mothers, and that children of an Indian father by a white woman do not inherit under tribal custom. Petitioner's claim is that the Seneca Nation has lost the sovereignty it once had and is now subject to the laws of the State, and that under the State law petitioner is entitled to participate in the community property and funds of the tribe, and that he is entitled to be enrolled as a member of said nation and to enjoy the rights and privileges of said members, including the right to participate in the nation's community property.

Defendants oppose this application, upon the ground, among others, that this court is without jurisdiction over the Council of the Seneca Nation and without power to control or interfere with the membership in or the individual rights of such members in tribal property.

The question of the authority of the State courts over the Seneca Nation of Indians and their property rights has recently been before the Federal courts. (*United States ex rel. Kennedy* v. *Tyler*, 269 U. S. 13.) The controversy arose over the administration of the estate of petitioner's father, Nathaniel C. Patterson.

Nathaniel C. Patterson left a last will, naming his wife as executrix, which will was admitted to probate by the surrogate of Erie county, and the widow was appointed executrix. The Seneca Nation refused to recognize the right of the State Surrogate's Court in the premises, and the surrogate of the reservation proceeded to appoint one Sylvester J. Pierce administrator of the estate of said Patterson. Said administrator brought an action in the Peacemakers' Court of said reservation to recover possession of the real estate of the deceased on behalf of himself and one Eli S. Pierce. Thereupon, this court, on the application of said executrix, granted an alternative order of prohibition directed to the members of the Peacemakers' Court, restraining further proceedings in said action and also an order to show cause why such order of prohibition should not be made absolute, and in that proceeding a final prohibition order was issued directed to the three members of the Peacemakers' Court, the administrator and Warren Kennedy, mar-

shal of the reservation. Notwithstanding the prohibition order the administrator procured an order or decree of dispossession from the Peacemakers' Court directed to the marshal, who proceeded to execute said decree of dispossession against said executrix and the heirs of Nathaniel C. Patterson. Thereupon, this court adjudged said administrator and marshal guilty of contempt and they were ordered committed to the Erie county jail by the sheriff of Erie county. The said administrator and marshal thereupon secured a writ of habeas corpus from the Federal judge of the western district of New York, and were released pending the hearing upon such writ.

After careful consideration of the questions of the extent of the governmental power vested in the Seneca Nation and the extent to which such nation is subject to the laws of the State of New York, Judge HAZEL said (*United States ex rel. Pierce* v. *Waldo,* 294 Fed. 111): "There are numerous decisions in the courts of this State wherein the right of occupancy and possession and legal status of the Seneca Indians are ably and exhaustively discussed. In all of them it has been unequivocally held that, notwithstanding their pupilage and disabilities arising therefrom, the sovereignty of the State of New York attaches to their lands comprised within its boundaries." (Citing *Seneca Nation of Indians* v. *Christie,* 126 N. Y. 122; *Hatch* v. *Luckman,* 155 App. Div. 765; *Jimeson* v. *Pierce,* 78 id. 9; *People ex rel. Cusick* v. *Daly,* 212 N. Y. 183; *Benson* v. *United States,* 44 Fed. 178; *State of New York* v. *Dibble,* 21 How. [U. S.] 366.)

Judge HAZEL also stated: "As to heinous crimes committed on their reservations, the laws of the United States apply to them, and as to their civic relations to individual Indians occupying lands on the reservation by allotment or set-off they have, since 1849, been brought under the law of this State, and by their charter from this State the Senecas have bound themselves to embody no laws inconsistent with State and Federal laws."

That decision was affirmed by the United States Supreme Court (269 U. S. 13), which said: "That the State of New York, as early as 1849, at the request of the Indians, assumed governmental control of them and their property, passed laws creating and defining the jurisdiction of the peacemakers' courts, administered these laws through its courts, and that Congress has never undertaken to interfere with this situation or to assume control. Whether the State judicial power extends to controversies in respect of the succession of Indian lands within the boundaries of the State, whether the peacemakers' court in the exercise of its jurisdiction is subject to the authority of the State Supreme Court, whether

the subject-matter of these controversies and proceedings was one exclusively within the control of the national government and beyond the authority of the State, are all questions which, under the circumstances recited, it is peculiarly appropriate should in the first instance be left to be dealt with by the courts of the State. * * * "

Under these decisions it seems clear that the relief sought by the petitioner must be determined pursuant to the laws of this State and not the tribal customs of the Seneca Nation or Tribe; and that in any event the questions involved should in the " first instance be left to be dealt with by the courts of the State."

The alternative order of mandamus as prayed for is hereby granted.